IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER POWELL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17 C 8083 |
| BRIAN PAGE and CHARLES BEST, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:[1]

Walter Powell, a former inmate at Stateville Correctional Center, sued Dr. Brian Page, a clinical psychologist in Stateville's mental health department, and Lieutenant Charles Best, a corrections officer, under 42 U.S.C. § 1983. Powell alleges that while he was in custody at Stateville, Page and Best violated his rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Specifically, he alleges that they retaliated, conspired, and discriminated against him by subjecting him to disciplinary action because he refused mental health services, complained about a mental healthcare provider in a written request to Page, and earned a settlement in a prior lawsuit against Best and other corrections officers. Page and Best have moved for summary judgment on all of Powell's claims. For the reasons set forth below, the Court grants summary judgment in favor of the defendants.

---

[1] The Court thanks attorneys James Dasso and Abigail Van Hook of Foley and Lardner, LLP for their thorough and diligent work as appointed counsel for Mr. Powell.

**Background**

The following facts are undisputed except where otherwise noted. Powell is currently an inmate at Hill Correctional Center in Galesburg, Illinois. He was an inmate at Stateville Correctional Center between June 10, 2015 and February 14, 2018. He alleges that while he was in custody at Stateville, defendants Dr. Brian Page and Lt. Charles Best violated his constitutional rights. Page worked at Stateville from June 2016 to August 2019, initially working as a clinical psychologist, but in January 2017 he was promoted to mental health services director in the mental health department. Best, now retired, was a corrections lieutenant and the chairperson of the prison's adjustment committee.

In a separate and unrelated lawsuit Powell filed in December 2013, Powell asserted claims against Best and two other correctional officers for violating his constitutional rights. Pl.'s Ex. A, 2013 Lawsuit Compl. (dkt. no. 120-1). In November 2014, the case settled and Powell received a settlement payment from the Illinois Department of Corrections (IDOC).

**A.    Powell's mental health treatment**

While in custody at Stateville, Powell sought treatment for mental health issues from multiple clinical psychologists in the mental health department. Page was the head of the department during this time. Page did not provide direct patient care or consult with those providing patient care. In early 2017, a female clinical psychologist named Franzen began to treat Powell, but by June, the doctor-patient relationship between them had deteriorated, and Powell refused further treatment because, he claimed, her presence made him ill. Pl.'s Ex. B, Powell Dep. 26:19-27:16 (dkt. no. 194-

2) ("I had told you a long time ago about Ms. Franzen, about my belly being sick and wanting to throw up every time I see her face."). Powell also wrote multiple letters to the mental health department and delivered them by folding the letter, writing "request to mental health department" on the outside of the letter, and placing it between the bars of his cell for officers to collect. Pl.'s Resp. to Def. Page's Stat. of Facts ¶ 27 (dkt. no. 194). In some letters, he complained about Franzen and requested that she be removed as his treating provider; he also wrote letters to other providers expressing his satisfaction with their mental health services. Powell Dep. 27:16-28:3. Ashley Currie, the staff assistant in the mental health department, retrieved and sorted the department's mail.

On or around June 18, 2017, Powell wrote a letter to Page asking to "remove [him] away from Ms. Franzen." Powell Dep. 26:13-16. There is no evidence of this letter in the record, but Powell testified about its contents during his deposition. On June 19, 2017, after Currie picked up and sorted the mail, she came across a letter with threatening content. She brought to Dr. Page's attention. The letter stated:

> REQUEST TO MENTAL HEALTH
>
> I KEEP TELLING MENTAL HEALTH THAT IM NOT GOING TO SEE
> THIS BITCH THAT THEY KEEP SENDING TO TALK TO ME I TOLD HER
> LAST WEEK THAT HER FACE MAKE MY STOMACH HURT AND TO
> STOP COMEING TO SEE ME IF YALL SEND HER TO SEE ME ONE
> MORE TIME OR SEND ME TO HEALTH CARE TO TALK TO THE BITCH
> IM GOING TO RAPE THE HOE AND HUNT ANYONE THAT GET'S IN
> MY WAY AND TRY TO STOP ME PLAY GAME'S AND SEE WHAT
> HAPPEN . . . WALTER B51121 POWELL

Pl.'s Ex. B (dkt. no.120-2). Currie believed Powell wrote the letter because his name and personal inmate number were written on it. That day, Page, concerned about staff safety, reported the letter allegedly authored by Powell. He completed a disciplinary

3

ticket and delivered it to shift commander Major Nina Watts, who in turn gave it to a hearing investigator. Pl.'s Ex. C (dkt. no. 120-3).

Powell contends that he did not write the letter and that someone forged his name. He contends that Page and Best are responsible for "the origin" of the allegedly fabricated letter. Powell also suggests that Page would have been aware that the letter was not actually written by Powell because he was familiar with Powell's handwriting. This is so, Powell says, because Page had access to Powell's medical chart, which included other letters he sent to the mental health department. Page and Best dispute Powell's contentions and assert that Powell authored the letter and sent it to the mental health department. Page further contends that he had not received or reviewed any letter with Powell's name or inmate number other than the threatening letter.

**B.     Powell faces disciplinary action**

Page filed a disciplinary charge against Powell for intimidation or threats. *See* 20 Ill. Admin. Code § 504 (2017). The Illinois Administrative Code provides that an offender "shall receive written notice of the facts and charges being presented against him or her no less than 24 hours prior to the Adjustment Committee hearing." *Id.* § 504.80(b). The committee determines whether the offender committed the offense. A finding of guilt results in disciplinary action, such as a suspension of privileges or placement in segregation or confinement. Powell argues that various Stateville personnel violated Code procedures during the disciplinary process. For instance, he contends that the adjustment committee did not give him the required 24-hour written notice of the facts and charges being presented against him. 2d Am. Compl. ¶ 26 (dkt. no. 120). During his deposition, however, Powell testified that he received 24-hour

written notice. Powell Dep. 38:9-40:20.

On June 27, 2017, Powell appeared before the adjustment committee for a disciplinary hearing. He presented a writing comparison letter to support his contention that he did not author the threatening letter. He also called a witness, Calvin Watkins, an officer who testified that Powell "did say that Dr. Franzen made his stomach hurt as well." Pl.'s Stat. of Facts. ¶ 15 (dkt. no. 200). Powell also spoke on his own behalf regarding the charges. Powell says that Best, who was the adjustment committee's chairperson, failed to remove himself from the hearing on grounds of bias stemming from the 2013 lawsuit Powell filed against him, and he objected to Best's participation. Powell also argues that Best did not allow him to present evidence to support the assertion that he did not author the letter. Best disputes Powell's contention and argues that there is no evidence in the record of proceedings that Powell asked him to remove himself. Powell disputes this and suggests that Best tampered with the hearing report. The parties agree that Best concluded that Powell was deserving of disciplinary action, made a guilty determination, and sentenced him to forty-five days in segregation.

That same day, Powell was interviewed by two internal affairs officers. They concluded that disciplinary action against him was warranted. The next day, Powell was sent to segregation and on July 5, 2017, the committee issued its final report describing the disciplinary action. Powell then pursued administrative remedies by filing two grievances—on July 10, with IDOC, and on July 18, with the Stateville grievance department. The IDOC administrative review board approved of the adjustment committee's decision. Pl.'s Ex. D, Grievance Docs. (dkt no. 120-5). Having exhausted all administrative remedies, Powell filed this lawsuit on November 8, 2017.

5

In count 1 of his second amended complaint, Powell asserts a claim of retaliation for activities protected under the First Amendment against both defendants. He contends that his refusal of health services and written complaint to Page regarding Franzen's treatment of him were activities protected under the First Amendment. In count 2, he asserts a claim against both defendants of conspiracy to deprive him of his First Amendment rights. In count 3, Powell asserts a "class of one" discrimination claim under the Equal Protection Clause and contends that both defendants discriminated against him by ignoring IDOC policies and singling him out to be sent to segregation. Powell argues that his written complaint regarding Franzen and the 2013 lawsuit resulting in settlement were the motivating factors behind the discrimination.

## Discussion

To obtain summary judgment, Page and Best must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cty. Sheriff's Dep't.*, 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted). The Court views the evidence and draws all inferences in favor of the nonmoving party. *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). Powell must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes*, 914 F.3d at

6

564. To support their motions, Page and Best argue that no reasonable jury looking at the facts in the light most favorable to Powell could conclude that they retaliated, conspired, or discriminated against Powell in violation of his rights under the First and Fourteenth Amendments. Accordingly, the defendants contend that they are entitled to summary judgment on all of Powell's claims.

**A.     Powell's retaliation claim**

To prevail on his First Amendment retaliation claim, Powell must first make out a *prima facie* case of retaliation. To do so, he must provide evidence "that he engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017).

Powell contends that he has met this requirement. He says that refusing Franzen's treatment and submitting a written complaint to Page were activities protected by the First Amendment; he was issued a disciplinary ticket and sentenced to segregation because of these activities; and these activities were a motivating factor in Page's decision to file a disciplinary report and Best's decision to sentence him. Powell also appears to argue that Best made a guilty finding on the charges because Powell had obtained a settlement from the 2013 lawsuit—an activity Powell also contends was protected by the First Amendment.

In response, the defendants argue that Powell cannot make out a *prima facie* case of retaliation. Page argues that Powell cannot establish the first and third elements. Def. Page's Opening Mem. at 5-7 (dkt. no. 182). He says that Powell's

7

activities were not protected by the First Amendment because his refusal of mental health services and written complaint regarding Ms. Franzen were frivolous and malicious. Page also contends that there is no causal connection between the disciplinary ticket he issued and Powell's speech. Accordingly, Page argues, Powell cannot show that his activities were at least a motivating factor in Page's decision to report him to a Stateville shift commander. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Page also argues that Powell failed to establish the absence of probable cause for the disciplinary report, which Page contends is a "threshold" requirement for Powell's First Amendment claim.

This last argument is unavailing; probable cause is an element a plaintiff must prove in a First Amendment case involving retaliatory arrest, not the present type of a retaliation lawsuit. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."). In *Nieves*, the Supreme Court explained that a plaintiff in a retaliatory arrest case must show an absence of probable cause "because probable cause speaks to the objective reasonableness of an arrest." *Id.* "[I]ts absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* Furthermore, the probable cause inquiry concerns "proving the link between the defendant's retaliatory animus and the plaintiff's injury"—which is "usually more complex" in a retaliatory arrest cases as compared to retaliation cases because "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's

8

potentially criminal conduct." *See id.* at 1723-24 (cleaned up). Page does not sufficiently explain how the "causal complexity" akin to a retaliatory arrest case is present in Powell's case or cases like it in a way that justifies extending the *Nieves* rule. *Id.* at 1724. In any event, Powell is already required to establish a causal connection between his speech and the disciplinary ticket Page issued as an element of a *prima facie* case of retaliation. *Id.*; *see Walker*, 867 F.3d at 803.

Best likewise argues that Powell cannot make out a *prima facie* case of retaliation because the alleged deprivation Powell suffered—finding Powell guilty based on the charges from the disciplinary hearing and sentencing him—is not a deprivation that would be likely to deter future First Amendment activities. Def. Best's Opening Mem. at 8 (dkt. no. 176). Best also argues that no reasonable jury could find that Powell established causation because the disciplinary ticket and hearing concerned a threatening letter allegedly authored by Powell, not Powell's other activities. In addition, Best notes, there was a four-year gap between the 2013 lawsuit and the disciplinary action Powell faced in 2017, which Best argues is insufficient to establish a causal connection. *Id.* at 9. Best also says that Powell's retaliation claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).

Best's argument that Powell's suit is barred under the *Heck* doctrine—on the theory that Powell is trying to invalidate the results of the 2017 disciplinary hearing—lacks merit. In *Heck*, the Supreme Court addressed whether a state prisoner may challenge the constitutionality of his conviction in a damages suit based on 42 U.S.C. § 1983. In *Antoine v. Ramos*, 479 F. App'x 631 (7th Cir. 2012), the Seventh Circuit explained that "*Heck* has no application to an inmate who was punished only with

9

segregation." *Id.* at 634 (explaining that the plaintiff's "contention that the disciplinary ticket was fabricated in retaliation for engaging in protected speech therefore is properly within the scope of a § 1983 suit"); *see also Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("administrative determinations [in prison disciplinary proceedings] do not . . . raise any implication about the validity of the underlying conviction"). Like the plaintiff in *Antoine*, the punishment imposed on Powell by the adjustment committee was segregation. Moreover, Powell's retaliation claim does not necessarily imply that he seeks to invalidate his "conviction" on the disciplinary ticket; he expresses that he does not seek to overturn the committee's findings. *See* Pl.'s Resp. to Def. Best's Opening Mem. at 13 (dkt. no. 193) ("Mr. Powell's retaliation and discrimination claims do not involve a request to reverse any findings").

The Court also notes that the *Heck* doctrine requires litigants "to resort to state litigation and federal habeas" before filing a § 1983 suit. *Muhammad*, 540 U.S. at 751. But Powell may not challenge the imposition of segregation by filing a habeas petition, so his claim of retaliatory imposition of segregation is neither contemplated nor barred by *Heck*. *See id.* at 751-52. And even if *Heck* does apply, district courts "may bypass the impediment of the *Heck* doctrine and address the merits of the case." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011).

Turning to the merits of Powell's retaliation claim, Powell contends that he engaged in three distinct activities, each of which was a motivating factor that caused Page and Best to retaliate against him. Pl.'s Resp. to Def. Best's Opening Mem. at 7; Pl.'s Resp. to Def. Page's Opening Mem. at 4 (dkt. no. 192). Powell contends that the defendants retaliated against him because he refused mental health services, wrote a

10

written complaint to Page complaining about Franzen, and he earned what he describes as a "significant" settlement in a prior lawsuit against Best four years prior to the disciplinary action underlying this case. 2d Am. Compl. ¶ 13. The Court addresses each of these activities in turn.

Powell argues that his refusal of mental health services, written complaint regarding Franzen, or other grievances related to health care caused Page and Best to take disciplinary action against him. Further, he says Page was familiar with his handwriting because he received or reviewed at least one written complaint regarding health services; Page "was not required to write a disciplinary ticket to Mr. Powell here because Mr. Powell did not write the Threatening Letter"; and "Dr. Page knew [that Powell did not write the letter]." Pl.'s Resp. to Def. Page's Opening Mem. at 4. But Powell has not pointed to any evidence in the record to support his contentions. Moreover, there is no evidence in the record that would permit a reasonable jury to find that Page had any knowledge or awareness of the alleged fabrication.

Next, Powell's contention that Best took disciplinary action against him because of a lawsuit he filed against Best in 2013 is entirely speculative on the record before the Court. As Best argues in his opening memorandum, there is no evidence that his determination that Powell was guilty of intimidation or threats took place "'on the heels'" of the 2013 lawsuit or the settlement of that lawsuit. Def. Best's Opening Mem. at 11-12 (quoting *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004)). The only connection between the two events supported by the record is that both involved Best, which is insufficient to permit a reasonable jury to find causation, especially in light of the multiple-year gap between the two events. *See Lavite v. Dunstan*, 932 F.3d 1020, 1031

11

(7th Cir. 2019) ("given [plaintiff]'s lack of other causation evidence [besides suspicious timing], the two-year gap between the critical events helps show that summary judgment was proper"). Thus there is no evidence in the record that would permit a reasonable jury to conclude that the settlement Powell earned in 2014 in the prior lawsuit against Best was a motivating factor in Best's decision to make a guilty finding on the charges.

Summary judgment is the point in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept [his] version of the events." *Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013). In opposing summary judgment, Powell has not pointed to any evidence that could be "put in an admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011). Although the Court "must assume the truth of the non-moving party's evidence on summary judgment . . . that duty 'does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013) (quoting *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013)).

Even when looking at the evidence and drawing all reasonable inferences in the light most favorable to Powell, the evidence is insufficient to permit a reasonable jury to find that the protected activities Powell describes are what prompted Page to issue Powell a disciplinary ticket or convinced Best to find Powell guilty of threatening violence against Stateville staff. Thus Powell has failed to present specific facts establishing a material issue for trial regarding causation. *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). Accordingly, the Court agrees with Page and Best's

argument that Powell has not produced evidence to make out a *prima facie* case of retaliation.

The Court notes that neither Powell nor the defendants directly address count 2, Powell's claim of conspiracy to retaliate. 2d Am. Compl. ¶¶ 48-53. Because there is insufficient evidence to permit a reasonable jury to find that either Page or Best retaliated against Powell, it follows that there is not enough evidence for a reasonable jury to find that they conspired to retaliate against him. In short, the deficiencies on count 1 also render count 2 deficient. The Court concludes that defendants are entitled to summary judgment on both of these claims.

**B.     Powell's class of one discrimination claim**

Under the Fourteenth Amendment's Equal Protection Clause, a plaintiff who does not allege that he is a member of a protected class may bring a claim of discrimination under a "class-of-one theory." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 770-71 (7th Cir. 2021) (quotation marks omitted). To sustain a claim along these lines, Powell must provide evidence from which a reasonable jury could find that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Id.* at 771. "For the second [criterion], we ask whether 'a *conceivable* rational basis for the difference in treatment' exists." *Id.* (quoting *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)).

Powell summarily argues that "all other inmates in the IDOC system represented 'similarly situated' inmates." Pl.'s Resp. to Def. Page's Opening Mem. at 8. This conclusory argument lacks merit. *See Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) ("Normally, a class-of-one plaintiff will show an absence of rational basis

13

by identifying some comparator—that is, some similarly situated person who was treated differently.") (quotation marks omitted). "To be similarly situated, a comparator must be 'identical or directly comparable' to the plaintiff 'in all material respects.'" *Id.* (quoting *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010)). Powell has not provided any evidence to support his contention that all persons imprisoned in IDOC are identical or comparable to him in any material respect, such as evidence of an imprisoned person who engaged in activities similar to or the same as those underlying this lawsuit. Accordingly, there is no evidence from which a reasonable jury could find that there were similarly situated imprisoned persons—such as those who refused mental health services or wrote written complaints to Stateville's mental health department (or even, say, those who refused medical services or made complaints about medical personnel)—who were treated differently.

Page and Best are therefore correct—the evidence Powell has produced in support of his class of one theory would not permit a reasonable jury to find that he faced discrimination based on the Equal Protection Clause of the Fourteenth Amendment. Thus the defendants are entitled to summary judgment on Powell's discrimination claim.

## Conclusion

For the foregoing reasons, the Court grants both defendants' motions for summary judgment [dkt. nos. 174, 177] and directs the Clerk to enter judgment in favor of defendants and against plaintiff.

_____
MATTHEW F. KENNELLY
Date: April 27, 2021                        United States District Judge